## Case No. 9,231.

MASON et al v. The BLAIREAU.

[See Case No. 9.230.]

---

## Case No. 9,232.

MASON et al. v. BOOM CO.

[3 Wall Jr. 252;[1] 20 Leg. Int. 12.]

Circuit Court, W. D. Pennsylvania. Sept. Term, 1858.

CONSTRUCTION OF STATUTES—FEDERAL AND STATE RIGHTS—GRANTS—PROVISIONS.

1. Although it is a settled rule of law, that when a proviso to a grant of any kind is repugnant to the grant itself, the grant is good and the proviso only void, yet this is a rule which is to be taken with modifications. And in the construction, especially of American statutory grants in derogation of common right, passed as private acts, oftentimes are in our legislatures inconsiderate, and after having been ingeniously drawn beforehand, by persons who had a special and not allowable interest of their own in view, and who have contrived language to carry their object, in such a way that the legislature less acquainted than they with exact facts, could not discover the precise import of the words used, the rule is always to be taken in subordination to the greater rule of law, that the true intention, as apparent from the whole grant, is to be effectuated.

2. Hence, if on a whole case, reference being largely had to the public interests, in determining this point, it appears that a grant meant to give rights in case those rights could be enjoyed in a certain way, in which way it is plain, after experiment, that they cannot be enjoyed, then the whole grant is void. And in such case it makes no difference whether the qualification to the grant be put in adjectitiously and after an absolute previous grant, or whether it be put in previously and as a condition precedent.

3. No state of the federal Union, by declaring, in a grant which it makes of certain rights, that any question which arises under that grant, shall be determined in such or such a way, can prevent any class of citizens from suing in the federal courts, if, by the constitution and statutes of the United States, they have a right to sue in such courts.

4. Semble, that the Pennsylvania statute of 1806. which enacts that in "all cases where a remedy is provided or duty enforced, or anything directed to be done by an act or acts of assembly of this commonwealth. the directions of the said act shall be strictly pursued, and no penalty

1 [Reported by John William Wallace, Esq., and here reprinted by permission.]

shall be inflicted. or anything done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such acts into effect " has reference to legal remedies only, and having been passed, when the equitable remedy of injunction was unknown in Pennsylvania, does not enjoin injunction.

This was a bill for injunction against stopping the complainants' lumber while it was floating down the Susquehanna; the case being thus:

A statute of Pennsylvania—Act March 29, 1849 [Laws 1849, p. 245]—made certain persons a corporation, under the name of the West Branch Boom Company, and authorized them to erect at a certain point on the Susquehanna, (a public highway of Pennsylvania,) such boom as might "be necessary for stopping and securing" lumber floating upon that river; giving them tollage; with a proviso that the boom should not extend more than half way across the river, and be so constructed as to admit the safe passage of rafts, boats and lumber, and not impede the navigation of the river. A second proviso not very consistent with the general scope of the law, enacted, that no lumber should be stopped without a written request from the owner, and that "a free and unobstructed passage shall at all times be kept open, so that the navigation shall be as free as it is now;" i. e., before the boom was constructed. It then provided that if any persons should "suffer damage by the exercise of the powers herein granted," and the parties injured and the boom company could not agree on the damages, "the court of common pleas having jurisdiction in the county where the boom is," should cause them to be ascertained by three freeholders, whom the court should appoint; and their report being confirmed, should have the effect of a judgment: with a right of appeal to a jury.

A previous well known general statute of Pennsylvania, passed in 1806,—Act March 21, § 2 [Thompson's Laws Pa. 1805-06, p. 569],—it is here necessary to say, enacts that in "all cases where a remedy is provided or duty enforced, or anything directed to be done by an act or acts of assembly of this commonwealth, the directions of the said act shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such acts into effect."

In this state of the law, the complainants, who were citizens of Rhode Island and Connecticut, were floating rafts down the Susquehanna, which got into the boom of the defendants, and were detained there several weeks; and having filed their bill as above stated against the defendants, praying that they might be enjoined from stopping it, the case came on to be heard on this bill and the answer to it.

The answer did not deny that the logs were detained, nor that the complainants might be damnified by such detention, but it alleged

that the defendants could not help what occurred; that they were doing their best to prevent all unnecessary detention; that their boom was constructed in the best manner, and according to their act of incorporation, and that if any detention occurred, not authorized, it was unavoidable, and an incident to the lawful exercise of their franchise: damnum absque injuriâ. It submitted, impliedly, that the power to make a boom of specific dimensions, which dimensions were here complied with, was clearly and primarily given; and if the law, subsequently, and by way of proviso, declared that in making the boom, impossibilities should be accomplished—that is to say—if it declared (which it seemed to do) that while the boom came one-half across the river, the navigation should be just as absolutely unobstructed as if there was no boom there at all—such a proviso it was—a proviso which provided for a physical impossibility, and for a thing inconsistent with and repugnant to the main object of the grant—which was void, and not the enacting clause which expressed the chief scope of the act, viz.: the power to build the boom. It then opposed to the prayer for an injunction, these objections:

I. That the rivers of Pennsylvania, though highways for its citizens, were not necessarily so for the citizens of other states.

II. That the act authorizing the boom prescribed the manner in which any one aggrieved should get satisfaction, and the more ancient, well known and general statute of 1806, declared that in such a case no other remedy could be had.

Messrs. Armstrong and Maynard, for complainants.

Mr. Linn, for the Boom Company.

GRIER, Circuit Justice. The objection that the river is made a highway only for citizens of Pennsylvania, and that the complainants claim rights as Pennsylvanians, while they deny their character as citizens, is answered by that article of the constitution of the United States which declares that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." The complainants have a right to hold land in Pennsylvania, to erect mills and use the public highways by land or water, as freely as citizens of Pennsylvania, and have, moreover, a right to sue a citizen of Pennsylvania, or a corporation, the members of which are presumed to be citizens of Pennsylvania, in this court.

To the second objection—that one founded on the specific remedy given by the act of incorporation and the general Pennsylvania statute of 1806—there are several answers, each of which is conclusive.

I. The legislature of a state cannot take away the privilege conferred by the constitutional laws of the Union upon citizens of other states, to sue in the courts of the United States, by enacting a special remedy in their own county courts.

II. It has never been decided that the act of 1806 has reference to any other than legal remedies and penalties. At the time that act was passed the equitable remedy by injunction was unknown, or at least not in use in Pennsylvania.

III. The act of incorporation gives the special remedy only in cases where persons suffer damages "by the exercise of the powers granted to the corporation;" whereas the complainants charge that they have been injured by an exercise of powers not granted to the corporation. If this were a case where complainants' land was taken, or the water diverted from or turned upon it, or any other injury, direct or indirect, caused by the legitimate exercise by the defendants of the powers granted in their act of incorporation, the remedy provided by the act might have been pursued. But has no application to the present case; and more especially so, as the bill does not demand the removal of the boom as a nuisance, but only an injunction against the exercise of powers not granted by law to the corporation.

The only question, then, that remains, is whether the company have a right to stop the logs of the plaintiffs, and detain them for weeks from passing down the river without their consent. Confused and contradictory as the language of the statute is, we need not grope for its meaning through its various sections. This much, however, we may assert as quite plain: That when the legislature granted this franchise to the defendants, it was on the representation of the grantees, and the understanding of all concerned, that a boom could be kept up, which would not necessarily infringe the public right of navigation. It is a condition of the grant, that the corporation shall not detain the logs of those who do not wish it; the company have no power to do so, and in accepting the franchise and acting under it, they have admitted their ability to exercise their powers without injury to the rights of others.

The assertion involved in the answer that it is impossible to construct the boom which is authorized, so as to separate the logs and give those a free passage which they have no right to detain, amounts to a confession that their boom is a nuisance. If they cannot so construct it as to detain only the logs of those who request this duty of them, and not detain the property of those who do not, they have a franchise which, by their own showing, is impossible to be exercised. They must take it with its burthens as well as its benefits, or not take it at all. It would be a strange construction of their franchise, which would permit them to exercise prohibited powers, because convenient for the exercise of those granted.

Injunction decreed.